UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA SAOIRSE SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No.  2:23-cv-01327 CKD SS<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment.  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1990, applied on August 30, 2018, for DIB and SSI, alleging disability beginning May 25, 2015.  Administrative Transcript ("AT") 23, 332.  Plaintiff alleged she was unable to work due to seizures, chronic PTSD, ulcer active colitis, postural orthostatic tachycardia

1

syndrome, low vision, chronic fatigue syndrome, cognitive impairment, polycystic ovarian syndrome, and being wheelchair bound.  AT 361.  In a decision dated December 30, 2021, the ALJ determined that plaintiff was not disabled.[1]  AT 23-41.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through March 30, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset date.
>
> 3. Since the alleged onset date of disability, May 25, 2015, the claimant has had the following severe impairments: Crohn's disease, affective disorder, an anxiety disorder, and post-traumatic stress disorder.  Beginning on the established onset date of disability, the

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

date of Title 16 application, August 30, 2018, the claimant has had the following severe impairments: ulcerative colitis, post-traumatic stress disorder, disorder of the spine, conversion disorder, obesity, postural orthostatic tachycardia syndrome, and myoclonic disorder.

4. Prior to August 30, 2018, the date the claimant became disabled, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that prior to August 30, 2018, the date the claimant became disabled, the claimant has the residual functional capacity to perform sedentary work [with listed exceptions, including that she] **can stand and/or walk for a total of about 2 hours in an 8-hour workday, and can sit for about 6 hours in an 8-hour workday.** . . . [She] can understand, carry out, and remember simple and detailed but uninvolved instructions in two hour increments sufficiently enough to complete an eight-hour workday in an environment that does not require fast paced or production paced work and can only have occasional interaction with coworkers and supervisors. Finally, the claimant must work in an environment where the work is stable and routine with no frequent workplace changes.

6. The claimant has no past relevant work.

7. Prior to the established disability onset date, the claimant was a younger individual age 18-44.

8. The claimant has at least a high-school education.

9. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.

10. Prior to August 30, 2018, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant could have performed.[2]

11. Beginning on August 30, 2018, the Title 16 application date, the severity of the claimant's impairments has met the criteria of section 12.07 of 20 CFR Part 404, Subpart P, Appendix 1.

12. The claimant was not disabled prior to August 30, 2018, the Title 16 protective filing date, but became disabled on that date and has continued to be disabled through the date of this decision.

13. The claimant was not under a disability within the meaning of the Social Security Act at any time through March 30, 2016, the date last insured.

---

[2] Relying on testimony from the VE, the ALJ found that plaintiff could perform the sedentary occupations of addresser, toy stuffer, and type-copy examiner. AT 35.

3

AT 26-41 (emphasis added).

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ posed an incomplete hypothetical to the vocational expert (VE) at Step Five; and (2) the ALJ failed to resolve an apparent conflict with the Dictionary of Occupational Titles (DOT).

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

////

ANALYSIS

    A.  <u>Hypothetical to the Vocational Expert</u>

Plaintiff asserts that the ALJ's hypothetical question to the VE at Step Five did not include the limitation of sitting "for about 6 hours in an 8-hour workday." Defendant counters that the sitting limitation was implicit in the ALJ's hypothetical concerning "sedentary" work.

Hypothetical questions posed to a VE "must set out all the limitations and restrictions of a particular claimant." <u>Thomas v. Saul</u>, 796 Fed. Appx. 923, 925 (9th Cir. 2019) (unpublished), citing <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988). The court may affirm if the error is harmless. <u>Leach v. Kijakazi</u>, 70 4th 1251, 1255 (9th Cir. 2023).

Here, the ALJ asked the VE to assume "an individual of the claimant's age, education and work experience who is able to perform work at the sedentary level or slow level," with certain physical and mental limitations as set forth in the RFC. AR 72. The stated limitations did not include the ability to "sit for about 6 hours in an 8-hour workday," though this limitation was in the RFC. The VE identified three jobs "[a]t the sedentary level of exertion": addresser, toy stuffer, and type-copy examiner. AT 73.

Previously, plaintiff had testified that she was "completely bedbound" and had to be "transported laying down" on a gurney. AT 63. She testified that she "started being bedbound on and off" while attending college in 2015 and currently used an electric wheelchair. AT 69-70. In an unchallenged finding, the ALJ found plaintiff's statements only partially credible, noting that medical records in the 2015-2016 timeframe "do not note that the claimant was in a wheelchair or bedridden." AT 33. Although the two State agency medical consultants who reviewed plaintiff's records found her capable of light work, the ALJ limited her "to a sedentary exertional capacity due to her reported ambulation issues and pain." AT 34.

Questioning the VE at Step Five, the ALJ asked:

> Q: If the individual required a wheelchair for ambulation, how would that affect those three jobs?
>
> A: It would not, Your Honor.
>
> Q: Why would – why would the wheelchair not affect those three positions?

>A: Those jobs are essentially performed seated.  They're at one workstation.  So, if the person was . . . moving from one place to another within their worksite, as long as they're able to carry small items in their lap, for sample, or a basket, they would still be able to perform those jobs.  The moving of material is really incidental in all of these positions. . . .
>
>Q: Okay. So, these – would they be – are these positions where [they're] typically sitting the entire day?
>
>A: Yes, Your Honor.
>
>Q: For an individual who could not carry items – supposing they were bedbound – what impact would that have . . . on those jobs?
>
>A: That would preclude all work, Your Honor.

AT 73-74.

As noted above, plaintiff's RFC was for sedentary work, including the ability to "sit for about 6 hours of an 8-hour workday."  AT 30.  Plaintiff acknowledges that "the full range of sedentary work can involve sitting most or all of the day, six to eight hours."  ECF No. 19 at 3, citing, e.g., Vertigan v. Halter, 260 F.3d 1044, 1052 (9th Cir. 2001) ("In a work environment requiring sedentary work, the Social Security Rules require necessary sitting as the ability to do such for six to eight hours a day."); see SSR 83-10, 1983 WL 31251, at *5 (defining "sedentary work" as work "performed primarily in a seated position" in which "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.").

The three jobs identified by the VE are classified as sedentary work.  It is not entirely clear why plaintiff believes that the ALJ's failure to define the term "sedentary work" to the VE, specifically as to sitting limitations, constituted harmful error.  See Priestly v. Kijakazi, 2021 WL 5566750, *10-11 (E.D. Cal. Nov. 29, 2021) ("Following Terry [v. Saul, 998 F.3d 1010 (9th Cir. 2021)], courts throughout the Ninth Circuit have determined that an ALJ did not err in identifying an exertional level for the [VE] without the sitting, standing, or walking limitations that are later specified in the claimant's RFC.") (collecting cases).

Despite her testimony, plaintiff was not found to be wheelchair-bound, so the ALJ's questions to the VE about whether a wheelchair-bound person could perform the identified jobs

turned out to be largely irrelevant.  In the context of that discussion, the VE stated that the jobs entailed "typically sitting the entire day"—meaning that a wheelchair-bound person could perform them.  The answer has little bearing on whether plaintiff, who was found able to stand or walk for about two hours a day, could perform them, and there is no evident reason why she couldn't.  Plaintiff has not shown harmful error on this basis.

### B.  Inconsistency with Dictionary of Occupational Titles

Plaintiff next claims that, at Step Five, the ALJ did not resolve an apparent inconsistency between the VE's testimony and the Dictionary of Occupational Titles (DOT).

Plaintiff's RFC limits her to "no frequent workplace changes."  AT 30.  The jobs identified by the VE are classified as reasoning level 2, which requires a worker to "[d]eal with problems involving a <u>few concrete variables</u> in or from standardized situations."  DOT, Appendix C (emphasis added).  Plaintiff argues that the ALJ failed to ask how a worker limited to "no frequent" workplace changes could endure the "few concrete" variables allowed by reasoning level 2, and that this constituted harmful error.  Defendant counters that there is no apparent conflict between the DOT and VE testimony about the identified occupations.

The DOT is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy."  <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements.  The DOT is a primary source of reliable job information for the Commissioner.  20 C.F.R. § 404.1566(d)(1); <u>see</u> <u>Johnson v. Shalala</u>, 60 F.3d 1428 (9th Cir. 1995) (reliance on the DOT acts as a presumption that may be rebutted by the testimony of a vocational expert); <u>see also</u> Social Security Ruling 00-4p (providing that when there is an apparent unresolved conflict between the vocational expert's testimony and the DOT, the ALJ must clarify the discrepancy).  Under <u>Zavalin v. Colvin</u>, 778 F.3d 842, 846 (9th Cir. 2015), "[w]hen there is an apparent conflict between the [VE's] testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle – the ALJ is required to reconcile the inconsistency."  In order to trigger the ALJ's duty to inquire, the conflict between the VE's testimony and the

DOT's job description must be "obvious or apparent."  Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016).  The Gutierrez court continued:

> This means that the testimony must be at odds with the Dictionary's listing of job requirements that are essential, integral, or expected. . . . [T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about.  Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required.

Id.

Here, plaintiff's subtle argument about the alleged incompatibility of her RFC and the identified jobs is not "obvious," as she claims.  Courts have rejected similar arguments, in fact.  In Padilla v. Saul, 852 Fed. Appx. 277, *278-79 (9th 2021) (unpublished), the Ninth Circuit concluded that "there was no obvious or apparent conflict" between a claimant's limitation to "only occasional changes to essential job functions" and jobs requiring reasoning level 2.  The DOT's descriptions of jobs identified by the VE—in that case, office helper and counter clerk— did not "indicate that it is likely that either occupation requires more than occasional changes in essential job functions."  Id. at 279.  Rather, the DOT job description of office helper included "a discrete list of specific duties, suggesting that the essential duties of [the job] remain invariable."  Id.  So too for the jobs of addresser, toy stuffer, and type-copy examiner.

More recently, in Cervantes v. O'Malley, No. 1:22-cv-1565 JLT GSA, 2024 WL 1173827, *5 (E.D. Cal. Mar. 19, 2024), the district judge rejected the plaintiff's argument that there was "a conflict between the ability perform the reasoning Level Two occupations cited by the vocational expert where there is a limitation to so-called 'occasional changes in the work setting[.]'" (Some internal quotation marks omitted.)  The court noted that "[d]istrict courts have repeatedly determined plaintiffs who can deal with work changes on an occasional basis are not precluded from dealing with 'a few concrete variables' as required under Reasoning Level 2." Id. (collecting cases).  Because there was no obvious conflict triggering the ALJ's duty to inquire, plaintiff has not shown harmful error on this basis.

////

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  June 13, 2024

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/smith1327.bothdibssi.ckd